IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


NEW MEXICO CATTLE GROWERS
ASSOCIATION; TEXAS & SOUTHWESTERN
CATTLE RAISERS ASSOCIATION;
OKLAHOMA FARM BUREAU; KANSAS FARM
BUREAU; CANADIAN RIVER MUNICIPAL
WATER AUTHORITY; TEXAS CATTLE
FEEDERS ASSOCIATION; HIGH PLAINS
UNDERGROUND WATER CONSERVATION
DIST. #1; ENVIRONMENTAL FEDERATION OF
OKLAHOMA; PROAG OF OKLAHOMA;
SETTLERS DITCH CO.; OKLAHOMA
FARMERS UNION; OKLAHOMA
CATTLEMEN'S ASSOCIATION; HITCH
ENTERPRISES; PANHANDLE
GROUNDWATER CONSERVATION DISTRICT;
KANSAS LIVESTOCK ASSOCIATION; NORTH
PLAINS UNDERGROUND WATER
CONSERVATION DIST.; and OKLAHOMA
PANHANDLE IRRIGATION AND
AGRICULTURE ASSOCIATION;

       Plaintiffs,

  -vs-                                                                                              Civ. No. 02-0461 LH/RHS

GALE NORTON, Secretary of the Interior;
STEVEN WILLIAMS, Director of the U.S. Fish and
Wildlife Service; and THE U.S. FISH AND
WILDLIFE SERVICE;

       Federal Defendants,

CENTER FOR BIOLOGICAL DIVERSITY,

       Intervenor/Defendant.


**MEMORANDUM OPINION**

**THIS MATTER** comes before the Court on Plaintiffs' and Federal Defendants' Joint Motion to Approve Settlement Agreement (Docket No. 30), filed February 14, 2003, and Federal Defendants' Oral Motion for Voluntary Remand, made at the hearing on the Joint Motion on September 16, 2003.  The Court, having considered the Motions, the memoranda of the parties, and the applicable law, having heard the oral argument of counsel, and otherwise being fully advised, finds that the Joint Motion is not well taken and will be **denied** and that Federal Defendants' Oral Motion for Voluntary Remand is well taken and will be **granted**.

Plaintiffs, a coalition of 17 agricultural and ranching associations and water supply agencies from New Mexico, Texas, Oklahoma, and Kansas, bring suit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, to challenge the United States Fish and Wildlife Service's ("FWS" or the "Service") designation of critical habitat for the Arkansas River shiner (the "shiner"), 66 Fed. Reg. 18002 (April 4, 2001)(the "Final Rule").  Plaintiffs challenge the Service's Final Rule designating critical habitat for the shiner on several grounds, including that FWS improperly used its "incremental baseline approach" to assess economic impacts flowing from critical habitat designation under 16 U.S.C. § 1533(b)(2), among other violations of the ESA, the APA, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4231-4370f.

Agreeing with Plaintiffs that the Tenth Circuit's holding in *New Mexico Cattle Growers Ass'n v. United States Fish & Wildlife Service*, 248 F.3d 1277 (2001), issued subsequent to the shiner critical habitat designation, is controlling on the issue of use of the incremental baseline approach and

2

dispositive of this case, Federal Defendants negotiated a Settlement Agreement with Plaintiffs. The essential elements of the agreement include 1) vacatur of the Final Rule; 2) remand to FWS for the consideration of all factors relevant to the promulgation of a new designation of critical habitat for the Arkansas River shiner, not just those limited to economic impact; and 3) a remand schedule that directs the Service to begin work on the shiner critical habitat designation in October of 2005 and issue a new final rule designating critical habit by October 2007, or January 2008 if a NEPA Environmental Impact Statement ("EIS") is necessary.

Intervenor/Defendant Center for Biological Diversity (the "Center") objects to the Settlement Agreement. It first maintains that the critical habitat rule should not be vacated pending remand, stating that if it were not vacated, the Center would not oppose the proposed schedule for completing the remand. Alternatively, the Center contends that if the critical habitat is vacated pending remand, the proposed deadline for designating critical habitat anew is far too long and, in fact, is not permitted by the ESA or governing case law. The Center proposes a timeline giving FWS three months in which to issue a proposed rule regarding critical habitat designation, with the final rule to be issued within another six months, or nine months if an EIS is necessary.

Generally, the Court either must approve or deny a settlement agreement; "'the settlement must stand or fall as a whole.'" *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982)). While the Court need not determine whether a statutory violation has occurred, its focus "in assessing the agreement should be the purposes which the statute is intended to serve, rather than the interests of each party to the settlement." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1125 (D.C. Cir.

1983). Thus, the court "must ensure that the agreement is not illegal, a product of collusion, or against the public interest." *Colorado*, 937 F.2d at 509. Additionally, the Court "has the duty to decide whether the decree is fair, adequate, and reasonable before it is approved." *Id.*

The Court agrees with all of the parties that the Service's designation of critical habitat for the shiner is fatally flawed and must be remanded to FWS for issuance of a new critical habitat designation in compliance with the ESA. *See New Mexico Cattle Growers Ass'n*, 248 F.3d at 1285 (holding baseline approach to economic analysis not in accord with language or intent of ESA). The Court cannot agree with the Plaintiffs and Federal Defendants, however, that it has discretion to consider the Service's budgetary restrictions, need to comply with other court orders and settlement agreements, and/or preferred priorities of activities in setting a time limit on remand. Rather, the Court finds that *Forest Guardians v. Babbitt* is controlling precedent in this case and that on remand FWS must complete the redesignation "as soon as possible," taking into consideration "what work is necessary to publish the new rule and how quickly that can be accomplished." 174 F.3d 1178, 1193 (10th Cir. 1999). Additionally, in no case may the Service exceed the statutory time limits set forth in the ESA for the promulgating critical habitat designations: the FWS must issue a proposed critical habitat designation for the shiner no later than one year after the date of the Court's Order in this matter, and a final rule no more than one year later. *See* 16 U.S.C. § 1533(a)(3)(A), (b)(3)(B), (b)(6)(A). Finding, therefore, that material terms of the Settlement Agreement setting deadlines for promulgation of the new critical habitat for the shiner are contrary to the ESA and the case law in this Circuit, the Court must deny the Joint Motion to Approve Settlement Agreement.

Given that the critical habitat designation must be remanded, the Court will grant Federal Defendants' Oral Motion for Voluntary Remand. On remand the Court finds that, pursuant to *New Mexico Cattle Growers Ass'n*, the current rule designating critical habit must be vacated. 248 F.3d at 1285 (after expressly rejecting use of baseline approach to economic analysis, Tenth Circuit set aside the Southwestern willow flycatcher critical habitat designation with instruction to FWS to issue new critical habitat designation in compliance with opinion as required by ESA).

Even if this result were not mandated by *New Mexico Cattle Growers Ass'n*, vacatur of the Final Rule would result under the analysis set forth in *Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n*. 988 F.2d 146, 150-51 (D.C. Cir. 1993)("The decision whether to vacate [a rule found to be arbitrary, capricious, or otherwise not in accordance with law] depends upon the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." (internal quotation omitted)). As has been held by other courts, this Court finds that use of the baseline approach results in substantive, not merely procedural, flaws to the critical habitat designation, thereby warranting vacatur. *See Bldg. Indus. Legal Defense Found. v. Norton*, 231 F. Supp. 2d 100, 105 (D.D.C. 2002); *Nat'l Ass'n of Home Builders v. Norton*, 2001 WL 1876349, at *3 (D. Ariz. Sept 21, 2001). Furthermore, while a court may, within its equitable discretion, keep an improperly promulgated rule in place pending remand, Intervenor/Defendant has presented little, if any, evidence of resulting harm to the shiner. *See Nat'l Ass'n of Home Builders*, 2001 WL 1876349, at *3; *Bldg. Indus. Legal Defense Found.*, 231 F. Supp. 2d at 106 ("arguments are too abstract to have much weight . . . have not identified any specific threat to the species or the designated critical habitat . . . failed to identify any concrete threat to the habitat . . . there must be some factual basis for

determining what the disruptive consequences might be"); *see also New Mexico Cattle Growers Ass'n*, 248 F.3d at 1285 ("The listing of the species will remain in effect and the significant protections afforded a species by listing will not be undermined."); *cf. Middle Rio Grande Conservancy Dist. v. Babbitt*, 206 F. Supp. 2d 1156, 1163-4, 1167, 1184, 1193 (D.N.M. 2000) (retaining for 120 days statutorily invalid final rule designating critical habitat because future of Rio Grande silvery minnow at "imminent risk"; though historically one of most abundant and widespread fishes in basin, over past 30 years presence reduced to 5% of historic range; river consistently over-appropriated, frequently below optimum water level, at times clearly without flow sufficient to support existence of species; "dire nature" of minnow's present situation, recent and rapid disappearance from may parts of river).

Finally, the Court finds that the scope of inquiry on remand may encompass any criteria the Service feels are appropriate in designating a new critical habitat and will not be limited to reconsideration only of the economic analysis component. *See Bldg. Indus. Legal Defense Found.*, 231 F. Supp. 2d at 107 ("re-examining the entire critical habitat designations at this time would enable FWS to ensure that its assessments are based upon the 'best scientific data available,' and would allow FWS to consider objections raised to the initial designations by plaintiffs and intervenors"). Through a full and fair reconsideration by the Service of all relevant criteria informing its decision, the Court hopes that future challenges to the reissued shiner critical habitat designation will be curtailed.

An Order in accordance with this Memorandum Opinion shall be entered contemporaneously.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**